UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

-------------------------------------------------------------------------X

CHRISTOPHER CONOR HEPP,

                Plaintiff,

     v.

THE BARNES FOUNDATION; SHELLEY BERNSTEIN, *individually*; PEG ZMINDA, *individually*; and VALERIE GAY, *individually*,

                Defendants.

Civil Action No.

**COMPLAINT**

Plaintiff Demands a Trial by Jury

-------------------------------------------------------------------------X

Plaintiff, CHRISTOPHER CONOR HEPP, as and for his Complaint against the above Defendants respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO") and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against and harassed on the basis of his disability (both actual and perceived disabilities), and retaliated against on the basis of his reporting of the same.

## JURISDICTION AND VENUE

2. This action involves questions of federal law under the Americans with Disabilities Act of 1990.

3. This court has supplemental jurisdiction over the state and city causes of action, as they arise out of the same nucleus of operative fact.

4. Venue is proper in this district based upon the fact that Plaintiff was employed by Defendants within the County of Philadelphia, Commonwealth of Pennsylvania, within the Eastern District of Pennsylvania. Additionally, the events at issue took place in Philadelphia County, Pennsylvania within the Eastern District of Pennsylvania.

5. Around June 24, 2020, Plaintiff dual-filed charges with the Equal Employment Opportunity Commission ("EEOC"), Pennsylvania Human Relations Commission ("PHRC"), and Philadelphia Commission on Human Relations ("PCHR") against all Defendants as set forth herein.

6. Around May 21, 2021, the EEOC issued Plaintiff his Notice of Right to Sue.

7. This action is being commenced within 90 days of receipt of the EEOC Notice of Right to Sue.

## PARTIES

8. Plaintiff CHRISTOPHER CONOR HEPP (hereinafter referred to as "Plaintiff" and/or "HEPP") is seeking damages to redress the injuries Plaintiff has suffered as a result of being discriminated against by his employer on the basis of his disability (both actual and perceived), and retaliated against for complaining about and reporting the discrimination.

9. Plaintiff HEPP is an individual male who resides in the County of Chester within the Commonwealth of Pennsylvania.

10. At all times material, Defendant THE BARNES FOUNDATION (hereinafter referred to as Defendant and/or "BARNES") was and is a domestic nonprofit corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania.

11. At all times material, Defendant BARNES operated and continues to operate a museum located at 2025 Benjamin Franklin Parkway, Philadelphia, PA 19130.

12. At all times material, Defendant SHELLEY BERNSTEIN (hereinafter referred to as "BERNSTEIN") was employed by Defendant BARNES as Deputy Director and Chief Experience Officer, and later as Consulting Creative Technologist.

13. At all times material, Defendant BERNSTEIN held supervisory authority over Plaintiff.

14. At all times material, Defendant PEG ZMINDA (hereinafter referred to as "ZMINDA") was and is employed by Defendant BARNES as Vice President.

15. At all times material, Defendant ZMINDA held supervisory authority over Plaintiff.

16. At all times material, Defendant VALERIE GAY (hereinafter referred to as "GAY") was and is employed by Defendant BARNES as Deputy Director of Audience Engagement.

17. At all times material from approximately mid-2019 to the present, GAY held direct supervisory authority over Plaintiff.

## MATERIAL FACTS

18. Plaintiff claims a continuous practice of discrimination and claims a continuing violation, and makes all claims herein under the continuing violations doctrine.

19. Around 2016, Defendant BARNES hired Plaintiff as Director of Visitor Services, working out of Defendant's museum located in Philadelphia, PA.

20. Upon his hire, Plaintiff initially reported directly to Defendant BERNSTEIN.

21. Plaintiff was diagnosed with epilepsy around 2016, which causes periodic seizures. Accordingly, Plaintiff takes prescribed medication in order to manage his symptoms.

22. Beginning throughout 2017, Defendant BERNSTEIN regularly harassed and demeaned Plaintiff and created a hostile working environment.

23. By means of example, BERNSTEIN would mock Plaintiff regarding his disability and would berate him about his alleged "memory problems." BERNSTEIN's harassment was so pervasive that Plaintiff even resorted to changing his prescribed medication dosages (after consulting with his doctor) in a futile attempt to placate BERNSTEIN and stop her harassment.

24. BERNSTEIN also regularly baselessly accused Plaintiff of poor communication skills and even told him at one point that he was no longer permitted to take notes when he met with her.

25. As BERNSTEIN's harassment did not cease, Plaintiff reported the ongoing harassment to Defendant ZMINDA, but received no support.

26. Accordingly, around January 2018, Plaintiff directly addressed the harassment with BERNSTEIN in a meeting and informed her that the treatment was unacceptable and contrary to Defendant BARNES' employee handbook and policies.

27. Soon after this meeting, around February 2018, Defendant BERNSTEIN retaliated against Plaintiff by issuing him a negative annual performance review for the 2017 Fiscal Year. Defendant ZMINDA, who was also Acting Head of Human Resources at the time, was also present for this meeting, and accordingly was made fully aware of BERNSTEIN's illegal retaliation.

28. Accordingly, Plaintiff soon after made a formal complaint to BARNES' General Counsel, Sarah Geelan, as well as to BARNES' Human Resources department, reporting both BERNSTEIN's ongoing disability-related harassment and blatant retaliation for opposing the same.

29. BARNES did little in response other than to inform Plaintiff that he needed to sign his performance appraisal if he was to receive his yearly pay increase and that he could include comments if he desired.  Although Plaintiff did so, BARNES failed to provide his yearly pay increase.

30. Despite Plaintiff's reports, BERNSTEIN continued to harass Plaintiff throughout mid-2018, and began subjecting him to increased scrutiny and nitpicking in response to his report of her conduct.

31. Furthermore, despite BARNES' assurance to Plaintiff that his report would be investigated and that he would receive written documentation of such, Plaintiff never received any communication regarding his complaints.

32. Accordingly, BERNSTEIN was given free rein to continue harassing Plaintiff, culminating in an incident in which she screamed at Plaintiff and belittled him during a telephone call around June 14, 2018, which Plaintiff accordingly again reported to Human Resources.

33. Around August 10, 2018, BERNSTEIN transitioned to a new role with BARNES as Consulting Creative Technologist, and Plaintiff began working under the direct supervision of Defendant ZMINDA.

34. Unfortunately, ZMINDA continued the campaign of harassment and retaliation against Plaintiff that BERNSTEIN had begun.

35. By means of example, instead of fairly reviewing Plaintiff's performance, ZMINDA issued a negative performance review to Plaintiff for the 2018 Fiscal Year, and also revealed that she had accepted BERNSTEIN's 2017 appraisal of Plaintiff that lacked Plaintiff's signature or notes in which he rebutted BERNSTEIN's false claims.

36. ZMINDA also continued to discriminate and retaliate against Plaintiff in other ways, such as holding a meeting with Valerie Gay and Plaintiff's staff to gather further information for his review without his knowledge that such information would be used for his review, and subjecting Plaintiff to a "360 Performance Appraisal" despite Plaintiff's continued strong work performance.

37. Ultimately, ZMINDA failed to formally complete Plaintiff's 2018 performance review until October 2019 – 11 months after the report was due. ZMINDA's actions constituted continued retaliation and a continued maintenance of the same hostile work environment to which Defendants subjected Plaintiff.

38. Around March 5, 2019, Plaintiff met with Defendant GAY for the first time, who informed Plaintiff that she had been told that "some staff" (specifically referring to Plaintiff) suffered from Post-Traumatic Stress Disorder ("PTSD") from Defendant BERNSTEIN's actions.

39. Following this meeting, Defendants regularly referred to and perceived Plaintiff as a person suffering from PTSD.

40. During this time, Plaintiff was still required to report to BERNSTEIN on various projects, and BERNSTEIN continued to discriminate and retaliate against Plaintiff by untruthfully complaining that Plaintiff's performance was subpar, as well as reporting negative comments to ZMINDA about Plaintiff.

41. Around June 2019, Defendant BARNES formally moved Plaintiff under Defendant GAY's management. Soon after, GAY remarked to Plaintiff that she still regularly met with BERNSTEIN.

42. Accordingly, despite the change in direct management, BERNSTEIN still negatively impacted Plaintiff's career and used her influence to continue the hostile work environment and retaliation against him.

43. Around January 14, 2020, Defendants announced a forthcoming "restructuring" of Plaintiff's department.

44. Accordingly, a Senior Director position was created above Plaintiff's position, and Plaintiff was accordingly informed that because of the restructuring and the creation of the Senior Director position, he would once again not be receiving a salary increase for the year. Despite Defendants' refusal to provide Plaintiff a salary increase, a majority of Plaintiff's direct reports allegedly received pay increases.

45. Additionally, Defendants excluded Plaintiff from numerous meetings directly pertaining to this restructuring, while at the same time forming a group composed of two executive team members, three HR employees, and three other department directors who were formerly Plaintiff's equals to plan the restructuring and the future of the department. Defendants never informed Plaintiff why they had refused to include him in this process.

46. Even more egregiously, due to the creation of the new position, Plaintiff was effectively demoted, as Plaintiff's department (Visitor Experience) was combined with the Security Department, and he was accordingly made to share a Director position and begin reporting to a Senior Director, instead of the executive team to which he previously

reported, lowering him on Defendants' organizational chart. Plaintiff was also excluded from high-level meetings and discussions in which he formerly had been included.

47. In connection with the "restructuring," Plaintiff's oversight of the Ticketing and Call Center departments was removed and given to the Director of Retail, who was then promoted to a Senior Director level because of this added work.  Incredibly, Plaintiff had been requesting a similar promotion because of his added responsibilities since 2017, yet Defendants refused to treat Plaintiff in the same way.

48. In a further act of discrimination, Defendants refused to allow Plaintiff to interview for the newly-created Senior Director position after he applied around February 11, 2020, despite his substantial qualifications for the position. In an apparent attempt to justify their discriminatory actions, Defendants further proved their discriminatory animus, referencing Plaintiff's "troubles in the past" and "the PTSD" for their justification to deny him the promotion.  Instead, the position was given to a substantially lesser qualified individual.

49. In a meeting with Defendant GAY around the same time, GAY told Plaintiff that she had "pushed [him] as far as she could" and once again referenced Plaintiff's perceived PTSD.

50. Accordingly, during a telephone call with HR Director Sheronda Whitaker (hereinafter "Whitaker") around February 18, 2020, Plaintiff inquired why he had not been promoted to a Senior Director position considering that he had overseen more departments and staff than any prior Director or Senior Director.  In response, Whitaker stated that the employee who had been given the promotion had received such because of their revenue growth, increase in workload, and increase in staff—all areas in which Plaintiff had

successfully managed for several years while being regularly denied the same opportunity.

51. As a further act of retaliation for his continued reports of discrimination and harassment, Defendants cut Plaintiff's work hours to around 20 per week during the COVID-19 pandemic, while keeping his similarly-situated coworkers at full-time hours.

52. By means of example, Defendant GAY informed Plaintiff in early June 2020 that his similarly-situated coworker, Al Holland (hereinafter "Holland") (with whom Plaintiff was made to share a co-director position as noted in paragraph 39) was being brought back to work on a full-time basis to handle "security concerns," but that Plaintiff would remain part-time. As Plaintiff also oversaw security operations for Defendants, Defendants had no legitimate reason to treat Plaintiff differently.

53. Even when Plaintiff directly requested to be included in discussions pertaining to security concerns due to recent protests in Philadelphia between Holland, Defendant GAY, and Senior Director Erica Simonitis, Defendants ignored his request, failing to notify him of meetings or include him in discussions, despite Plaintiff's role in overseeing security with Holland.

54. Similarly, Defendants continued to exclude Plaintiff from discussions and important meetings such as the Weekly Operations Meeting, while inviting other employees at and even below Plaintiff's level to attend. Defendants also excluded Plaintiff from discussions and decision-making related to a supervisor's promotion to Manager within his department.

55. Defendants continued to tell Plaintiff that there was "no established time frame" for his return to full-time work throughout early June 2020, while at the same time bringing back

Senior Director Erica Simonitis on a full-time basis around June 15. Accordingly, Plaintiff was the only Director under Defendant GAY to continue working part-time hours during this time.

56. Finally, around June 19, 2020, Defendants abruptly contacted Plaintiff to schedule a meeting via videocall, and subsequently informed him during that meeting that they were terminating him due to alleged "financial constraints."

57. As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

58. As a result of Defendants' actions, Plaintiff felt and continues to feel extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

59. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

60. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

61. The above are just some examples of some of the discrimination and harassment to which Defendants subjected Plaintiff.

62. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

63. Plaintiff claims alternatively (in the event that Defendants claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

**AS A FIRST CAUSE OF ACTION
FOR DISCRIMINATION UNDER THE ADA
(Not Against Defendants BERNSTEIN, ZMINDA, or GAY)**

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

65. Title 42 of the Americans with Disabilities Act of 1990 (Pub. L. 101-336), Chapter 126, Subchapter I, § 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

66. Defendants engaged in an unlawful discriminatory practice by discriminating against and harassing Plaintiff because of his disabilities (both actual and perceived).

67. As such, Plaintiff has been damaged as set forth herein.

**AS A SECOND CAUSE OF ACTION
FOR RETALIATION UNDER THE ADA**

68. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

69. Title 42 of the Americans with Disabilities Act of 1990 (Pub. L. 101-336), Chapter 126, Subchapter IV, § 12203, states: "(a) Retaliation: No person shall discriminate against any

individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

70. Defendants engaged in an unlawful discriminatory practice by discriminating against and retaliating against Plaintiff because of Plaintiff's opposition to Defendants' unlawful employment practices.

### AS A THIRD CAUSE OF ACTION
### FOR DISCRIMINATION UNDER THE PENNSYLVANIA
### HUMAN RELATIONS ACT
### (Not against Defendants BERNSTEIN, ZMINDA, or GAY)

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

72. PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

73. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his disability (both actual and perceived).

74. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE PENNSYLVANIA
## HUMAN RELATIONS ACT

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

76. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

77. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A FIFTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER THE PENNSYLVANIA
## HUMAN RELATIONS ACT
## (As against Defendants BERNSTEIN, ZMINDA, and GAY)

78. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

79. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the

provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

80. Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**AS A SIXTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER THE PHILADELPHIA
FAIR PRACTICES ORDINANCE
(Not against Defendants BERNSTEIN, ZMINDA, or GAY)**

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

82. The Philadelphia Fair Practice Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice to practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited, to the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

83. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practice Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of Plaintiff's disability (both actual and perceived).

84. Plaintiff hereby makes a claim against Defendant under all of the applicable paragraphs of Philadelphia Fair practice Ordinance Chapter 9-1100.

## AS A SEVENTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE PHILADELPHIA
## FAIR PRACTICES ORDINANCE

85. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

86. The Philadelphia Fair Practice Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: "For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she, or it has complied with the provisions of this chapter, exercised his, her or its rights under this chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

87. Defendant engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practice Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practice of Plaintiff's employer.

## AS AN EIGHTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER THE PHILADELPHIA
## FAIR PRACTICES ORDINANCE
## (As against Defendants BERNSTEIN, ZMINDA, and GAY)

88. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

89. The Philadelphia Fair Practice Ordinance § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the

doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

90. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practice Ordinance § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this section or any order issues hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

91. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practice Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:  July 13, 2021

                                    **DEREK SMITH LAW GROUP, PLLC**
                                    *Attorneys for Plaintiff Christopher Conor Hepp*

                     By: /s/ Nathaniel N. Peckham
                             Nathaniel N. Peckham, Esq.
                             1835 Market Street, Suite 2950
                             Philadelphia, Pennsylvania 19103
                             Tel. (215) 391-4790
                             Fax: (215) 893-5288
                             nathaniel@dereksmithlaw.com